# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PAULA F.,[1]

       **Plaintiff,**

                                        **Case No. 2:21-cv-13196**

    **v.**                              **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Paula F. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On March 26, 2013, Plaintiff filed her application for benefits, alleging that she has been disabled since February 1, 2012. R. 174, 192, 290–96, 308. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

and upon reconsideration. R. 193−97, 201−05. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 206. Administrative Law Judge Donna Krappa ("ALJ") held a hearing on December 8, 2016, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 125−67. The ALJ conducted a supplemental hearing on July 26, 2017, in order to obtain medical expert testimony from Martin A. Fechner, M.D. R. 84−115. Plaintiff, with counsel, also testified at that hearing, as did a vocational expert. *Id*. In a decision dated October 4, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 1, 2012, Plaintiff's alleged disability onset date, through the date of that decision ("the 2017 decision"). R. 20−30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 29, 2018. R. 1−7. Plaintiff timely appealed the 2017 decision pursuant to 42 U.S.C. § 405(g). R. 2327–32. On July 14, 2020, the undersigned reversed the 2017 decision pursuant to Sentence 4 of 42 U.S.C. § 405(g) and remanded the matter to the Commissioner after concluding that the ALJ had failed to acknowledge or discuss the opinion of the consultative orthopedic examiner, Tiziana Jasper, M.D., that Plaintiff was capable of sitting or standing for only 20 minutes at a time, nor did she state what weight she gave to Dr. Jasper's opinion. R. 2360–75.

On remand, the Appeals Council directed the ALJ "to offer the claimant the opportunity for a hearing and address the additional evidence submitted, take any further action needed to complete the administrative record and issue a new decision." R. 2378.[3] The ALJ held another hearing on January 6, 2021, at which Plaintiff, who was again represented by counsel, appeared

---

[3] The Appeals Council also noted that Plaintiff had filed a subsequent claim for Title II disability benefits on January 17, 2019, and directed the ALJ to consolidate those claims and issue a new decision on the consolidated claims. *Id*. The Appeals Council further directed the ALJ to "apply the prior rules to the consolidated case pursuant to HALLEX I-5-3-30." *Id*.

and testified, as did a vocational expert. R. 2275–96. In a decision dated March 24, 2021, the

ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at

any time from February 1, 2012, Plaintiff's alleged disability onset date, through December 31,

2017, the date on which Plaintiff was last insured for Disability Insurance benefits. R. 2244–58.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 9, 2022,

Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to

28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[4] On that

same day, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for

disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   THE 2021 DECISION AND APPELLATE ISSUES

Plaintiff was 52 years old on her alleged disability onset date. R. 2256. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity that date and December 31, 2017, the date on which she was last insured. R. 2247.

At step two, the ALJ found that Plaintiff's asthma, exogenous obesity, disorder of the right knee, disorder of the back, migraines, depression, and anxiety were severe impairments. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 2247–49.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 2249–56. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a teacher. R. 2256.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as an electronics worker, a small parts assembler, and an inspector/hand packager—existed in the national economy and could be performed by Plaintiff. R. 2256–57. The ALJ went on to find that, even if Plaintiff's RFC included a sit/stand option—a limitation that the ALJ did not believe was supported by the record—those same jobs would still remain available to Plaintiff at a significant number in the national economy, although at a reduced number. R. 2257. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 1, 2012, her alleged disability onset date, through December 31, 2017, the date on which Plaintiff was last insured. *Id.*

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 10. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Tiziana P. Jasper, M.D.

At the initial administrative hearing held on December 8, 2016, the ALJ advised that she would order an orthopedic consultative examination of Plaintiff. R. 86, 166. On December 29, 2016, Plaintiff presented to Tiziana P. Jasper, M.D., for that examination. R. 1974−84. Dr. Jasper completed a three-page written narrative, R. 1974–76, as well as a check-the-box, and fill-in-the blank form entitled, "Medical Source Statement of Ability to Do Work (Physical)[,]" R. 1977–84. Dr. Jasper described Plaintiff's reported history of back pain as follows:

> She describes a history of lumbar back pain, which started prior to 2008 when she underwent spinal lumbar fusion. Her back pain is described to be intermittent and to be elicited by sitting, walking, or standing for prolonged period of times. The pain radiates posteriorly to her right lower extremities. She denies symptoms of paresthesia, such as numbness or tingling. She grades her pain at long period of time and picking up heavy objects. She remains independent in her basic and instrumental activity of daily living. She was a Special Education teacher and stopped working in 2012 due to symptoms of depression and social anxiety.

R. 1974 [sic]. On physical examination, Dr. Jasper noted that Plaintiff was ambulatory and that she was not dependent on any assistive device. R. 1975. Dr. Jasper noted a decreased lumbar flexion and extension to 60 degrees. *Id*. Plaintiff's deep tendon reflexes were +2 and equal bilaterally. *Id*. Sensory examination was normal and Plaintiff's muscle strength was 5/5. *Id*. Under the heading "Assessment and Plan[,]" Dr. Jasper noted as follows:

> This is a 51-year-old female with:
>
> 1.    Hypertension and hyperlipidemia, controlled with present medication regimen. She is treated for her disease by her primary care. She does not have history of complications; cardiac, renal, peripheral, or vascular complication.
> 2.    Seasonal asthma. Last exacerbation was over 2 months ago. Her symptoms are controlled with 1 inhaler. She does not have a history of past emergency room visit or hospitalization for uncontrolled asthma.
> 3.    Symptoms of depression and anxiety. She is presently followed by a psychiatrist and a therapist. Due to her symptoms, she has become isolative.

9

4.    History of lumbar spinal fusion. The claimant describes residual back pain with symptoms of right lower extremity radiculopathy. <u>She claims</u> *physical restriction in the walking, standing, and sitting for prolonged period of time or picking up heavy objections. Her physical examination demonstrated a decreased range of motion of the lumbar spine. The rest of the physical exam was within normal limits. Her gait was unassisted by any device. He* [sic] *did not appear to be antalgic. She was able to walk at a reasonable pace and did not require assistance in sitting in a chair or to getting up raising from the chair or examining table.*

R. 1975–76 (emphasis added).

In the medical source statement, Dr. Jasper opined, *inter alia*, that Plaintiff could sit, stand, and walk for a total of 8 hours in an 8-hour workday, but could sit and stand for only 20 minutes at a time. R. 1978. Plaintiff could walk for one hour at a time and did not need a cane to ambulate. *Id.* Plaintiff could perform such activities as shopping, traveling without a companion for assistance, ambulating without using a wheelchair, walker, two canes, or two crutches, walking one block at a reasonable pace on rough or uneven surfaces, using standard public transportation, climbing a few steps at a reasonable pace with the use of a single hand rail, preparing a simple meal and feeding herself, caring for her personal hygiene, and sorting, handling, and using paper/files. R. 1983. According to Dr. Jasper, these limitations began in 2008. *Id.*

**B.    Michael S. Gutkin, M.D.**

Plaintiff was first seen by Michael S. Gutkin, M.D., on April 5, 2017. R. 2209. After seeing Plaintiff again on April 11, 2017, May 10, 2017, and May 17, 2017, Dr. Gutkin reported as follows about his follow up appointment with her on May 31, 2017:

Ms. F[.] returned to my office for followup on May 31, 2017. She has done only four sessions of physical therapy on her lower back at that time but her pain is down to 5/10. She feels the meloxicam was not helping much and she is aggravated by sitting more than 10 minutes or standing more than 10 minutes. The pain is radiating down from her knee to her foot. I reviewed the MRI and it showed that there was 13-4 with moderate central stenosis and bulge at L5-S1 with foraminal stenosis. My

> impression is [if] Paula is slightly improved with physical therapy [after] only four
> sessions, continue physical therapy. If she is not better in two to three weeks,
> consider the epidural at L3-4 versus L5-S1.

R. 2210.

On June 14, 2017, Plaintiff reported to Dr. Gutkin that physical therapy had not helped;

her pain remained a 7 out of 10. *Id.* On July 17, 2017, Dr. Gutkin administered a bilateral S1

transforaminal epidural, which Plaintiff tolerated well. R. 2210. On August 9, 2017, Dr.

Gutkin opined as follows:

> Ms. F[.] has back issues stretching back for over 10 years in which she has
> undergone a fusion at L4-5. She has since developed adjacent level of pathology at
> L3-4 and L5-S1 with severe disk disease at L5-S1. Ms. F[.] is currently undergoing
> physical therapy and epidurals with which the success is yet to be determined. It is
> my impression that she is likely to get some benefits with the facet injections and
> epidurals as planned. However, I do not expect her to have a full improvement in
> her symptomatology. Ms. F[.] is very likely to need additional back surgeries
> including a L5-S1 fusion due to the severity of degenerative disk there, a L4-5
> revision and possibly a L3-4 laminectomy and partial diskectomy for the disk bulge
> to try to reduce the effects of the stenosis at L3-4.
>
> It is my impression that Ms. F[.]'s symptoms and medical condition will be a
> lifelong issue that will impair on her abilities to lift, walk and sit for any prolonged
> period of time. *She will need to have a job that allows her to take frequent breaks
> and/or change positions frequently enough to help with her symptoms*. I do not
> believe she can do any repetitive motions and/or frequent lifting. I do not believe
> that she is able to lift any heavy objects even occasionally. I have limit[ed] her
> lifting abilities to 20 to 25 pounds on very limited occasion and do not see this as
> improving markedly in the future as treatment progresses.
>
> As a board-certified physician in physical medicine rehab with specialty on
> nonoperative spinal care, I certify that my statements are correct and true based
> upon the review of old records and my own physical plans.

R. 2210−11 (emphasis added).

### C.    Kathleen Saradarian, M.D.

In a letter addressed to Plaintiff's counsel and dated February 20, 2017, Kathleen

Saradarian, M.D., Plaintiff's treating physician, stated as follows:

11

> I reviewed Paula's disability report and the physical limitations suggested. I missed your deadline though. I didn't notice that when I read the fax. I am not sure what you are asking. The limitations seem fair, except maybe fore [sic] crouching and kneeling and working at unprotected heights; I would never recommend that she should be at a height. *But as far as weights, sitting, standing, walking, etc., those are what you need to do to live independently successfully, which she does. I can't say I have evaluated Paula's back in years. It doesn't even come up in our office visits and I didn't know it was an issue for her. Her disability is mental not physical.*

R. 2041 (emphasis added).

On June 18, 2020, Dr. Saradarian completed a four-page, check-the-box, and fill-in-the-blank form entitled, "Physical Medical Source Statement." R. 5668–71. Dr. Saradarian indicated that she had treated Plaintiff every three to four months for 28 years. R. 5668. Dr. Saradarian diagnosed Plaintiff with major depressive disorder, lumbar disc disease with spinal arthritis, diabetes mellitus ("DM"), hypertension ("HTN"), hyperlipidemia, fibromyalgia, asthma, reflux esophagitis, and irritable bowel syndrome. *Id.* Plaintiff's prognosis was guarded. *Id.* Dr. Saradarian identified Plaintiff's symptoms as chronic pain, fatigue, lack of energy or motivation, episodes of dizziness, episodes of constipation or diarrhea, abdominal pain, difficulty swallowing, sleepiness, poor sleep, and headaches. *Id.* Asked to characterize the nature, frequency, precipitating factors, and severity of Plaintiff's pain, Dr. Saradarian responded as follows:

> Patient has multiple pains. She has peripheral neuropathy resulting in burning and soreness of her feet. She has radicular pain stemming from her back and/or neck. She gets bouts of abdominal pain. Precipitating factors have not been determined. [I]t seems random and the neuropathic pain is constant. Plaintiff rates her pain at a 5 at it's [sic] least and a 9 at it's [sic] greatest. Her fibromyalgia causes widespread body pain.

*Id.* Dr. Saradarian also identified the clinical findings and objective signs as follows:

> *By report*, patient has had EMGs showing both the peripheral neuropathy and radicular pain. *Details not known to me.* Due to her multiple conditions and operations, clinical findings are widespread. She has body wide pain she also has

the major depression with flattened affect, paucity of words, poor eye contact. She moves slowly and carefully when getting from chair or walking.

*Id.* (emphasis added). According to Dr. Saradarian, Plaintiff "has been compliant with recommended treatments. She is on a multitude of medications to try to improve her depression and increase her function and decrease her pain. Side effects are sedation, dry mouth, slowed cognition, change in bowels to name a few." *Id.* According to Dr. Saradarian, Plaintiff's impairments lasted or were expected to last at least twelve months. *Id.* The doctor also opined that emotional factors contributed to the severity of Plaintiff's symptoms/functional limitations, identifying the following psychological conditions that affect Plaintiff's physical condition: depression, anxiety, and "Psychological factors affecting physical condition[.]" *Id.* Dr. Saradarian assessed Plaintiff's functional ability in a competitive work situation as follows: able to walk less than one city block without rest or severe pain; able to sit for 30 minutes at one time before needing to get up; able to stand for 10 minutes at one time before needing to sit down or walk around; able to sit and stand/walk for a total of about two hours in an eight-hour working day (with normal breaks); needs to walk for five minutes every 30 minutes during an eight-hour working day; needs 5-10-minute unscheduled breaks every hour or so due to muscle weakness, chronic fatigue, and pain/paresthesias, and numbness. R. 5669. Plaintiff must also elevate her legs with prolonged sitting, reclining legs at heart level. *Id.* If Plaintiff had a sedentary job, Dr. Saradarian opined, Plaintiff would need to elevate her legs 50% of the time in an eight-hour working day due to swelling of Plaintiff's feet. *Id.* Dr. Saradarian denied that Plaintiff needed to use a cane or other hand-held device. R. 5670. According to Dr. Saradarian, Plaintiff could rarely (1% to 5% of an eight-hour working day) lift and carry less than 10 pounds in a competitive work situation and could rarely twist, stoop (bend), crouch/squat, climb stairs, but could never climb ladders. *Id.* Dr. Saradarian denied that Plaintiff had significant limitations with reaching,

13

handling, or fingering. *Id*. Plaintiff would likely be off-task 25% or more during a typical workday and Plaintiff was incapable of even "low stress" work as "[s]he barely tolerates daily life stress." R. 5671. Dr. Saradarian further opined that Plaintiff had "good days" and "bad days" and that she was likely to be absent from work as a result of her impairments more than four days per month. *Id*. Dr. Saradarian indicated that Plaintiff's impairments were reasonably consistent with her symptoms and the functional limitations described in the evaluation. *Id*. Asked to describe any other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis, Dr. Saradarian responded as follows: "Patient's depression is completely disabling. She can barely manage to do her ADLs and iADLs and take care of her children. She gets help. The physical issues would be nearly impossible to overcome if in good mental health but she has both issues." *Id*. According to Dr. Saradarian, "[b]ack pain started in about 2004. Depression started getting very bad in 2007." *Id*.

## V.    DISCUSSION

### A.    RFC

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because it does not include a 20-minute sit/stand option and off-task time to accommodate "[f]requent [u]se of a [r]estroom." *Plaintiff's Brief*, ECF No. 8, pp. 24–26; *Plaintiff's Reply Brief*, ECF No. 10, pp. 3–4. In advancing these arguments, Plaintiff specifically argues that the ALJ failed to properly weigh the opinions of Drs. Jasper, Gutkin, and Saradarian. *Id*. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the ALJ is charged with determining the claimant's RFC. 20 C.F.R. § 404.1527(e), 404.1546(c); *see also Chandler*

14

*v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform the exertional demands of light work as defined in 20 CFR 404.1567(b). Specifically, she is able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in and 8-hour workday; and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the postural and environmental demands of work, I find that the claimant is able to perform jobs: that require no use of ladders, ropes, or scaffolds; that require frequent (as opposed to unlimited) use of ramps or stairs; that require occasional balancing, stooping, kneeling, crouching, and/or crawling; and that involve no concentrated exposure to undue amounts of dust or known chemical irritants. *The claimant requires ready access to a rest room*. Furthermore, as to the mental demands of work, *I find that the claimant is able to perform jobs: that are simple and repetitive*; that require only an occasional change in the work setting during the workday; and that require only occasional contact with supervisors and the general public.

R. 2249 (emphasis added). In making this determination, the ALJ detailed years of record evidence relating to Plaintiff's mental impairments, including, *inter alia*, evidence that Plaintiff

15

had undergone mental health treatment with Dr. Alexandra Miller since 2007; that during a September 2014 consultative examination, Plaintiff presented with impaired concentration and it was opined that she would have difficulty relating to others, but that her intellectual functioning was estimated to be in the average range and she was able to follow and understand simple directions and instructions and perform simple tasks, and it was opined that she would be able to maintain a regular schedule; that Plaintiff testified in December 2016 that depression and social anxiety were her biggest problems; that Dr. Saradarian opined in February 2017 that any "disability" was mental, not physical; that Plaintiff reported in June 2017 that she had planned to travel with her children to Connecticut with no indication that the trip caused anxiety; that Dr. Miller's 2017 treatment notes reflect that Plaintiff engaged in social activities that included weekly bowling, 4H, and play dates, and that one of Plaintiff's daughters had been diagnosed with some cognitive issues that required Plaintiff to participate in meetings and discussions with the school to address the matter; that Plaintiff addressed some minor conflicts with siblings; that Dr. Miller's notes do not reflect a specific event or statement from Plaintiff indicating a worsening of her symptoms prior to December 31, 2017; and that Plaintiff testified in December 2017 that she ultimately left work because of mental impairments. R. 2250–53. The ALJ also detailed years of record evidence relating to Plaintiff's physical impairments, including, *inter alia*, Plaintiff's hearing testimony in December 2016 that she had returned to work as a teacher after having undergone injections and fusion surgery for back pain and her testimony at the supplemental hearing that she used only Advil to manage her back pain; Dr. Saradarian's February 2017 note that Plaintiff's back impairment had not come up in recent office visits and that any "disability" was mental, not physical; July 2017 notes that reflect that, although Plaintiff used a back brace, she had no limitations in range of motion in her back or neurological findings

16

such as decreased sensation or weakness in the lower extremities; Dr. Fechner's testimony at the

July 2017 supplemental administrative hearing that, despite Plaintiff's physical problems, she

was independent in her activities of daily living and that she presented with a normal gait with no

assistive device most of the time and that her motor strength was consistently normal and her

range of motion on flexion was near normal at 60 degrees; Dr. Fechner's opinion that Plaintiff

was capable of light exertion with the postural limitations incorporated in the RFC; Plaintiff's

September 2017 presentations and reports were largely similar to those contained in previous

records with no acute worsening of symptoms; Plaintiff December 2017 testimony that she

ultimately left work because of mental impairments; and the opinions of the state agency medical

consultants that Plaintiff was capable of a limited range of light work. R. 2250–53. The ALJ

went on to explain why the record evidence, including the opinion evidence and Plaintiff's

reported activities, did not support greater or additional limitations, as follows:

> I note that any opinions by medical doctors that the claimant is unable to perform
> simple and repetitive work at the light level of exertion during the period under
> consideration is contradicted by information that the claimant provided early in the
> case during the application process before the value of such opinions was even a
> consideration at the hearing level. Notably, the claimant never noted any problems
> with sitting standing and walking as a result of her medical conditions in the
> Function Reports she submitted during the application process (see Exhibits 3E and
> 6E). Moreover, neither did her mother note any problems in this area despite ample
> opportunity to do so on the 3rd Party Function Report she completed on her
> daughter's behalf (Exhibit 7E). In these reports the claimant and her mother instead
> focus on the claimant's concentration ability, which was the reason she left her
> highly skilled job as a teacher. Moreover, in her Function Reports, the claimant
> reported activities that arguably suggest she retained the ability to sit and stand for
> more than 20 minutes at a time during the period under consideration. For example,
> the claimant reported: that she would mow the lawn weekly for 1 ½ hours; that she
> cooked for an hour daily; that she did laundry for several hours; and that she went
> out to eat at a restaurant once a month (Exhibits 3E and 6E) In addition, she he [sic]
> has reported that during this time she was the primary caregiver for two small
> children, with the extraordinary amount of time, attention, and physical movement
> that such care necessitates.

R. 2255–56. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff nevertheless challenges this determination, arguing that the ALJ erred in evaluating the opinions of Dr. Jasper, Dr. Gutkin, and Dr. Saradarian. *Plaintiff's Brief*, ECF No. 8, pp. 24–25; *Plaintiff's Reply Brief*, ECF No. 10, pp. 3–4. An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[5] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight,

---

[5] As previously noted, Plaintiff's claim was filed on March 26, 2013. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. §

especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still

---

404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"

*Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225

F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the

government 'may properly accept some parts of the medical evidence and reject other parts,' the

government must 'provide some explanation for a rejection of probative evidence which would

suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994));

*Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a

non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642

F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the

wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been

rejected is required so that a reviewing court can determine whether the reasons for rejection

were improper.") (internal citation omitted). The Court considers Plaintiff's challenges in turn.

### 1.    Tiziana P. Jasper, M.D.

The ALJ assigned "[l]ittle weight" to Dr. Jasper's opinion, explaining as follows:

> Little weight also is given to the opinion of Dr. Jasper (Exhibit 25F). In completing the function-by-function form following her examination of the claimant, Dr. Jasper checked off the boxes the claimant could sit for 8 hours, stand for 8 hours, and walk for 8 hours in an 8-hour workday. She also noted the claimant could only sit for 20 minutes at a time and stand for 20 minutes at a time. Dr. Jasper did not explain anywhere on the form why she chose those amounts of time, despite being asked to relate any determinations she made to her examination or the record. In the absence of reasons explicitly stated on the form for Dr. Jasper's restrictions, a reference to the narrative examination report for any support is suggested. The only mention of ability to sit and stand in Dr. Jasper's narrative report is that the claimant alleged "physical restriction in the walking, standing, and sitting for prolonged period[s] of time or picking up heavy objects" (Exhibit 25F, page 1). Later, in the conclusory paragraph of the narrative report, while the doctor noted a decreased range of motion in the claimant's lumbar spine, she also noted that the rest of the claimant's physical examination was within normal limits, that the claimant's gait was unassisted by any device, that her gait was non-antalgic, that she was able to walk at a reasonable pace, and that she did not require any assistance in sitting in a chair or getting up and raising from the chair or the examining table. There is no

> support in the record for the restriction. Moreover, the limitation "to 20 minutes standing and 20 minutes walking at one time" is not supported by the claimant's reported activities of daily living and Function reports. As a result, I afford it little weight.

R. 2253–54. As detailed above, in discounting Dr. Jasper's opinion (including limitations in sitting and standing to 20 minutes at a time), the ALJ expressly considered the supportability and the consistency of Dr. Jasper's opinion with other evidence, including that physician's own findings and Plaintiff's reported daily activities. *Id*. The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. § 404.1527(c)(3), (4), (6); *Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) (finding that the ALJ "appropriately gave less weight" to a medical opinion that concluded that the plaintiff "was limited in his work abilities, [because] his report lacked adequate support for this determination" and because that "conclusion conflicted with both [the plaintiff's] self-reported daily activities and [the physician's] own positive reports after [] surgery" and discounted another physician's opinion as "inconsistent with the record evidence[,]" including that physician's "own findings that [the plaintiff] maintained normal grip strength and intact reflexes"); *Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *6 (D.N.J. Nov. 27, 2018) (finding that substantial evidence supported the ALJ's decision to discount a treating physician's opinion where, *inter alia*, the "opinion was not consistent with the Plaintiff's own testimony"); *cf. Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity."); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (concluding that, where the treating source's "medical opinion is contradicted by several pieces of evidence in the record and also contains internal inconsistencies, it is not entitled to the level of deference otherwise accorded to a treating physician's opinion").

21

Plaintiff complains that the ALJ improperly discounted Dr. Jasper's opinion because it was supported by the following: "back pain was elicited by sitting, standing or walking for a prolonged period. R 1974"; "decreased lumbar spine flexion and extension to 60 degrees. R 1975"; Plaintiff's "'claim[of] physical restriction in the walking, standing, and sitting for prolonged period of time'." R 1976"; and "decreased range of motion in lumbar spine." *Plaintiff's Brief*, ECF No. 8, p. 24; *see also Plaintiff's Reply Brief*, ECF No. 10, p. 3 ("Dr. Jasper included objective findings in her report: decreased lumbar spine flexion and extension to 60 degrees; decreased range of motion in lumbar spine."). Plaintiff's arguments are not well taken. As an initial matter, some of the evidence to which Plaintiff cites—that Plaintiff's back pain was elicited by sitting, standing or walking for a prolonged period and a claimed physical restriction in the walking, standing, and sitting for prolonged period of time—simply reflects Plaintiff's subjective complaints to Dr. Jasper. R. 1974, 1976. However, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Notably,

the ALJ discounted Plaintiff's subjective statements, a finding that enjoys substantial support in the record. R. 2250–55.

Moreover, the ALJ expressly acknowledged that Dr. Jasper had "noted a decreased range of motion in the claimant's lumbar spine," but went on to consider that the physician had "also noted that the rest of the claimant's physical examination was within normal limits, that the claimant's gait was unassisted by any device, that her gait was non-antalgic, that she was able to walk at a reasonable pace, and that she did not require any assistance in sitting in a chair or getting up and raising from the chair or the examining table." R. 2254. The ALJ also found that "the limitation 'to 20 minutes standing and 20 minutes walking at one time' is not supported by the claimant's reported activities of daily living and Function reports." R. 2254. In other words, the ALJ appropriately considered the contrary evidence in the record and concluded that substantial evidence did not support Dr. Jasper's opined limitations, including the sit/stand limitation. *Id.*; *see also Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Plaintiff's argument, therefore, boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("With regard to their impact on the RFC determination even when those impairments are considered not severe, Plaintiff does not articulate what additional restrictions should have been implemented. It is Plaintiff's burden

23

to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive error."). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Finally, the Court notes that even assuming for present purposes only that the ALJ erred in discounting Dr. Jasper's opinion and failing to include a sit/stand option in the RFC, any such error is harmless. As previously noted, the ALJ specifically asked the vocational expert what effect a sit/stand limitation would have on the three jobs identified by the vocational expert—*i.e.*, electronics worker, small parts assembler, and inspector/hand packager—and the vocational expert testified that the number of those jobs available to a claimant with all those limitations would be reduced by 75%. R. 2290–91. In her 2021 decision, the ALJ explained that a significant number of jobs in the national economy would still exist even with a sit/stand limitation:

> While I do not find the record supports the need for a limitation that includes a sit/stand option, I did put forth to the vocational expert a hypothetical of the limitations of the residual functional capacity with the inclusion of a sit/stand option. The vocational expert testified that the claimant could still perform all three of the representative occupations listed above, but at the following reduced numbers: electronics worker (7,500 positions available nationally), small parts assembler (49,000 positions available nationally), and inspector/hand packager (78,750 positions available nationally). This reflected the number of available positions reduced by 75% to accommodate the sit/stand option "at will," whereby an individual can alternate between sitting and standing at their discretion. Even if a sit/stand option was made part of the residual functional capacity, I find that there are still a "significant number of jobs" in the national economy.

24

R. 2257. Based on this record, Plaintiff has not shown that any alleged error in discounting Dr. Jasper's opinion or in failing to include a sit/stand limitation in the RFC is anything more than harmless error. *See See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

The Court therefore concludes that the ALJ's consideration of Dr. Jasper's opinion—and the ALJ's rejection of that doctor's sit/stand limitation—enjoys substantial support in the record.

### 2.    Michael S. Gutkin, M.D.

The ALJ went on to assign "limited" or "little" weight to Dr. Gutkin's opinion, reasoning as follows:

> The opinion dated August 9, 2017, of Dr. Gutkin is given limited weight (Exhibit 36F). Like Dr. Fechner and the DDS evaluators, Dr. Gutkin found the claimant capable of work at the light exertional level. The weight is reduced because Dr. Gutkin did not set forth a function-by-function analysis of the claimant's limitations. While not including function-by-function limitations, Dr. Gutkin did find the claimant required "frequent breaks and/or change positions frequently enough to help with symptoms." Dr. Gutkin did not quantify the length of time or frequency required for these breaks nor the frequency the claimant would need to change her position. Given the omissions of frequency/duration of the breaks and position and function-by-function analysis combined with the function reports submitted by the claimant and her mother (Exhibits 3E, 6E, and 7E), I accord the opinion little weight.

R. 2253.

Plaintiff argues that the ALJ erred in discounting Dr. Gutkin's limitation of "frequent breaks and/or change positions frequently" based on that physician's failure to provide a function-by-function analysis, contending that this reason is not a factor to be considered under the applicable regulations. *Plaintiff's Brief*, ECF No. 8, p. 25. Plaintiff further insists that this

opinion is entitled to more weight because "it is consistent with other opinions, such as Dr.

Saradarian's and Dr. Jasper's." *Plaintiff's Reply Brief*, ECF No. 10, pp. 3–4. This Court

disagrees. As the Acting Commissioner points out, *Defendant's Brief Pursuant to Local Civil

Rule 9.1*, ECF No. 9, pp. 15–16, the applicable regulation advises that a medical source's

explanation for a medical opinion is a relevant factor, 20 C.F.R. § 404.1529(c)(3), and, in any

event, the regulation permits an ALJ to consider "[o]ther factors" when weighing medical

opinions, *id.* at § 404.1529(c)(6). In this case, because Dr. Gutkin failed to specify the length of

time or frequency required for these breaks or to otherwise explain Plaintiff's specific functional

limitations, the ALJ properly discounted that opinion. *See id.* at § 404.1529(c)(3) ("The better an

explanation a source provides for a medical opinion, the more weight we will give that medical

opinion."), (c)(6) ("[W]e will also consider any factors you or others bring to our attention, or of

which we are aware, which tend to support or contradict the medical opinion."); *Muschko v.

Comm'r Soc. Sec.*, No. 20-2771, 2021 WL 3666638, at *3 (3d Cir. Aug. 18, 2021) (stating that

"[t]he ALJ was required to determine how much weight to afford the medical opinions, see 20

C.F.R. § 404.1527(c), and [it] was well within his discretion to not credit the doctors' conclusory

statements" where the ALJ did "not credit [the physicians'] conclusory statements about [the

claimant's] ability to maintain gainful employment where those statements *were not supported

by a function-by-function assessment* of [the claimant's] abilities and were contradicted by record

evidence") (emphasis added); *Woodruff v. Saul*, No. CV 20-946, 2021 WL 2012568, at *7–8

(E.D. Pa. May 20, 2021) ("Plaintiff also argues that the ALJ improperly rejected Dr. Tabby's

opinion on the grounds that the doctor failed to provide a function-by-function analysis. . . .

Given that Dr. Tabby offered an extremely general opinion that lacked an explanation in

vocational terms, the ALJ's approach is understandable and supported by both controlling

regulations and case law.") (citing, *inter alia*, 20 C.F.R. § 404.1527(c)(3)); *cf. Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015) ("[S]ubstantial evidence supports the ALJ's conclusion that Dr. Frank's opinion was not well-supported, as Dr. Frank failed to reference any objective medical evidence supporting his statements of disability *or articulate any specific functional limitations* suffered by [the claimant].") (emphasis added).

Finally, to the extent that Plaintiff contends that the ALJ should have accorded more weight to Dr. Gutkin's opinion because Plaintiff believes that opinion is consistent with the opinions of Dr. Jasper and Dr. Saradarian, the Court has already explained that the ALJ did not err in assigning little weight Dr. Jasper's opinion and, for the reasons discussed below, the ALJ properly discounted Dr. Saradarian's opinion.

### 3.      Kathleen Saradarian, M.D.

The ALJ assigned "little to almost no weight" to Dr. Saradarian's opinion for the following reasons:

> Dr. Saradarian did submit a subsequent function-by-function evaluation of the claimant's physical functioning on June 18, 2020 (Exhibit 81F). In the opinion, the claimant's long-time provider restricts the claimant to less than sedentary exertion (cannot lift/carry less than 10lbs more than "rarely"), can only sit and stand/walk 2 hours total in an 8-hour day, and can do no more than rare postural activities (with no climbing ladders). Additionally, Dr. Saradarian finds the claimant needing to get up every 30 minutes to walk around for five minutes. In addition, it was the doctor's opinion that the claimant would need a 5-10 minute break every hour. Dr. Saradarian also opines that the claimant's depression is "completely disabling," and states that she can barely manage activities of daily living, including individual activities of daily living.

> Discounting the inappropriate conclusion statements regarding the claimant's depression (which again does not include a function-by-function analysis of the claimant's mental impairments), I find the opinion merits little weight because it is not clear that the assessment pertains to the period at issue—from February 1, 2012, to December 31, 2017. The opinion is dated two and a half **_after_** the date last insured. Dr. Saradarian notes that she has been treating the claimant for almost 30 years and that her back pain started in 2004 and that her depression started in 2007.

> That however, is not a clear statement to support that these findings apply as of the period at issue. Is Dr. Saradarian indicating that the claimant's condition was at this "disabling" level since 2007, when she was engaged in full-time employment as a teacher and it was not until another three years when her impairments caused her to first take a leave of absence? If so, then the fact the claimant was working at substantial gainful activity at that level discounts the opinion. If this is not the case, then I am left to try to speculate as to when this 2020 opinion applies. The lack of clarity as to whether the opinion has a connection to the period at issue combined with generic conclusory statements about disability and severe limitations in functioning not supported by the objective evidence of either Dr. Saradarian's treatment notes or others in the records. As a result, I give little to almost no weight to this [o]pinion.

R. 2254 (emphasis in the original).

In challenging this evaluation, Plaintiff points out that Dr. Saradarian noted in 2012 that Plaintiff had been out on short term disability three or four times since 2006. *Plaintiff's Brief*, ECF No. 8, p. 25 (citing R. 1808). Plaintiff argues that this evidence establishes that she "had work limitations for years before her Alleged Onset Date for Social Security Disability." *Id*. The Court is not persuaded that this issue requires remand. The ALJ expressly acknowledged that Dr. Saradarian noted that Plaintiff's back pain and depression started in 2004 and 2007. R. 2254. However, the ALJ explained why this statement did not clearly establish that Dr. Saradarian's opinion of functional limitation applied to the specific period at issue, *i.e.*, February 1, 2012, through December 31, 2017, and why she is "left to try to speculate as to when this 2020 opinion applies." *Id*. Based on this record, the Court finds that the ALJ reasonably questioned whether Dr. Saradarian's opinion—issued more than two years after the date on which Plaintiff was last insured—applied to the relevant period. *Id*.; *see also Beety-Monticelli v. Comm'r of Soc. Sec*., 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion rendered nearly five years after the date last insured "lacked probative value" because it "shed no light" on the claimant's condition during the relevant period); *Porter v. Comm'r of Soc. Sec.*, No. CV 18-03744, 2019 WL 2590994, at *4–5 (D.N.J. June 25, 2019) (finding that the ALJ

28

did not err in assigning little weight to a physician's opinion on the basis that the opinion "'was rendered more than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back' to the disability evaluation period") (citations omitted); *Alston v. Astrue*, No. 10-cv-839, 2011 WL 4737605, at *3 (W.D. Pa. Oct. 5, 2011) ("[M]edical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue.").

While Plaintiff insists in reply that Dr. Saradarian's opinion—particularly the limitation that Plaintiff could sit/stand/walk for only a total of two hours per day and that she needs to walk around for five minutes every 30 minutes—is entitled to greater weight because "it is consistent with other medical and opinion evidence of record[,]" Plaintiff does not identify that other evidence. *See Plaintiff's Reply Brief*, ECF No. 10, p. 4. The Court will not hunt through the more than 6000 pages of record evidence in this case to construct Plaintiff's arguments for her. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."). In any event, to the extent that Plaintiff intended to argue that Dr. Saradarian's opinion is entitled to greater weight because Plaintiff believes that it is consistent with the opinions of Dr. Jasper and Dr. Gutkin, the Court has already explained that the ALJ properly discounted those opinions. Moreover, the ALJ also explained when discounting Dr. Saradarian's opinion that neither that physician's treatment notes nor other records supported the opined severe limitations in functioning. R. 2254. For example, the ALJ previously highlighted Dr. Saradarian's statement that Plaintiff's "back impairment had not come up in recent office visits and opined that any

'disability' was mental, and not physical[.]" R. 2251. For all these reasons, the Court finds that the ALJ properly discounted Dr. Saradarian's opinion.

### 4.    Plaintiff's testimony

Plaintiff also complains that the ALJ "should have considered [Plaintiff's] testimony and written statements when determining her need for a sit/stand option." *Plaintiff's Brief*, ECF No. 8, p. 26 (citations omitted). Plaintiff's argument is not well taken. The Court agrees with the Acting Commissioner that there is no reason to believe that the ALJ did not consider Plaintiff's allegations in this regard: The ALJ addressed Plaintiff's ability to sit, stand, and walk throughout the decision and explained why Plaintiff's subjective statements were not entirely consistent with the record. R. 2250–56. Even if the ALJ did not expressly detail the subjective complaint that Plaintiff now highlights, the ALJ need not describe every piece of evidence. *See Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 88 (3d Cir. 2015) ("[A]n ALJ is not required to cite every piece of evidence in the record.") (citing *Fargnoli*, 247 F.3d at 42); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record. Even in *Fargnoli*, the court conceded that it did not expect the ALJ to make reference to every piece of relevant information"). Plaintiff's argument in this regard will not serve as a basis to remand this case.

### 5.    Time off-task to use restroom

Finally, Plaintiff asserts that "it is not reasonable to find that 'ready access to a restroom' for irritable bowel syndrome would only take place during scheduled breaks. The Residual Functional Capacity is not complete because off-task time for frequent use of the restroom was not included." *Plaintiff's Brief*, ECF No. 8, p. 26; *see also Plaintiff's Reply Brief*, ECF No. 10, p. 4 ("It is illogical to require proximity to the facility but no related time to utilize the facility. It is

30

also illogical to only permit a person who needs the restroom frequently and/or urgently to use the facility during scheduled break times."). This Court disagrees. Plaintiff has pointed to no record evidence reflecting how frequently she uses the restroom or to evidence supporting her assertion that she needs time off-task because of her irritable bowel syndrome. *See Plaintiff's Brief*, ECF No. 8, p. 26; *Plaintiff's Reply Brief*, ECF No. 10, p. 4. Nor has Plaintiff explained why regular built-in breaks and "ready access to a restroom" would not sufficiently accommodate her condition. *See id*. As previously discussed, the Court will not hunt through the record or make Plaintiff's arguments for her. *See Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307. Based on this record, the Court is not persuaded that the RFC limitation of "ready access to a restroom" does not adequately accommodate Plaintiff's irritable bowel syndrome or that this matter otherwise requires remand. *See Williamson v. Berryhill*, No. 18-117, 2019 WL 802046, at *2 (W.D. Pa. Feb. 21, 2019) ("Regarding the need for bathroom breaks due to IBS, Plaintiff points to no medical opinion that indicates that such breaks are necessary, or pertinent details regarding such breaks, such as frequency. The fact that evidence exists to support Plaintiff's gastrointestinal symptoms does not affect this conclusion. It was not error for the ALJ to fail to account for such a limitation in either the RFC or the consequent hypothetical to the VE."); *Thomas v. Astrue*, No. CV 11-555-GMS, 2015 WL 4459065, at *10 (D. Del. July 21, 2015) ("Considering the breaks SSA regards as built-in to an eight-hour workday, there is substantial evidence that the stipulation providing for "ready access to a bathroom" would accommodate an individual who required frequent—e.g., three to four—bathroom breaks daily, even if some of these breaks were unscheduled. The court finds that the 'ready access to a bathroom' requirement accurately and sufficiently captured Thomas' credibly established toileting limitation."); *see also Thomas*, 2015 WL 4459065, at *10 n.5 ("An eight-hour workday consists

31

of a morning break, a lunch period, and an afternoon break at roughly two-hour intervals. . . . A person in Thomas' situation [with Crohn's disease needing three to four unscheduled breaks] would be able to use the bathroom at those times, limiting the need for bathroom breaks outside of scheduled break times.") (citations omitted).

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of Dr. Jasper, Dr. Gutkin, and Dr. Saradarian.

### B.   Step Five

Plaintiff also challenges the ALJ's step five determination, arguing that remand is required because the ALJ did not ask the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles ("DOT")[6] and because the RFC is inconsistent with the jobs identified by the vocational expert. *Plaintiff's Brief*, ECF No. 8, pp. 22–24; *Plaintiff's Reply Brief*, ECF No. 10, pp. 1–3. Plaintiff's arguments are not well taken.

At step five, the ALJ must decide whether the claimant, considering the claimant's RFC and vocational profile, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs

---

[6] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak,* 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. Moreover, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the

33

question is deficient and the expert's answer to it cannot be considered substantial evidence."
*Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

"As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT." *Zirnsak*, 777 F.3d at 617 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). Before relying on vocational expert testimony, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles[.]" SSR 00-4p, 2000 WL 1898704, at *1. "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak*, 777 F.3d at 617 (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002)). While an "ALJ's failure to comply with these requirements *may* warrant remand in a particular case[,]" "this Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (citations omitted) (emphasis added); *see also Jackson v. Barnhart*, 120 F. App'x 904, 905–06 (3d Cir. 2005) ("[E]ven if it was error for the ALJ to fail to solicit testimony about potential conflicts between this portion of the VE's testimony and the DOT, the error was harmless. Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision.") (citations omitted).

In this case, the ALJ failed to ask on the record whether the vocational expert's testimony was consistent with the DOT. R. 2286–95. Plaintiff asserts that "this error alone warrants

remand." *Plaintiff's Brief*, ECF No. 8, p. 23. However, as set forth above, that error, standing alone, is not sufficient to warrant remand. *See Zirnsak*, 777 F.3d at 617; *Jackson*, 120 F. App'x at 905–06. For the reasons that follow, the Court concludes that the ALJ's failure to ask the vocational expert about any conflict with the DOT is harmless because, in fact, no conflict exists between the RFC and the jobs identified by the vocational expert.

Here, the relevant hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 2249, 2287–89. The vocational expert responded that the jobs of electronics worker, small parts assembler, and inspector/hand packager would be appropriate for such an individual. R. 2288–89. Plaintiff's counsel questioned the vocational expert regarding mental limitations and the identified jobs as follows:

> Q      Okay. All right. And then the limitation to simple and repetitive, would you agree that the – that limitation would preclude the ability to carry out detailed, written and oral instructions?
>
> A      Do you mean like the reasoning level of 3 and above? Is that what you're referring to?
>
> Q      Yes.
>
> A      Those jobs do not have – they're below a reasoning level of 3. I believe they're a 1 or 2. I could look them up again. A 2, a 2, and a 2. So they do not require detailed - - a reasoning level of 3.
>
> Q      Okay.
>
> ATTY:  That's all I have, right now, Your Honor.

R. 2293–94.

Plaintiff now challenges this testimony, arguing that the RFC limitation of simple and repetitive jobs is inconsistent with the definitions of those jobs in the DOT, which require reasoning level 2. *Plaintiff's Brief*, ECF No. 8, pp. 23–24; *Plaintiff's Reply Brief*, ECF No. 10,

35

pp. 1–3. However, Plaintiff's counsel never objected to or challenged the vocational expert's testimony in this regard at the administrative hearing. R. 2286–95. Plaintiff's current attempt to raise these challenges therefore comes too late and will not serve as a basis to remand this matter. *See Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."); *Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the ALJ's ruling).

However, even if the Court were to consider the merits of Plaintiff's step five challenge, that challenge would not provide a basis for remanding this action. Plaintiff argues that the restriction to "simple and repetitive" work is inconsistent with the DOT definitions for electronics worker, small parts assembler, and inspector/hand packager, occupations that require reasoning level 2, *i.e.*, an ability to carry out "detailed" instructions. *Plaintiff's Brief*, ECF No. 8, pp. 23–24; *Plaintiff's Reply Brief*, ECF No. 10, pp. 1–3. Plaintiff's argument is not well taken. "The qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C, DOT). "GED measures 'those

aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id.* "GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id.* (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry out detailed but uninvolved written or oral instructions" in "problems involving a few concrete variables in or from standardized situations." *Id.* Reasoning level 3 applies "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" in "problems involving several concrete variables in or from standardized situations." *Id.* "SVP levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR." *Id.* (citing SSR 00–4p). The CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)–(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties," and "[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." *Id.* at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an

SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

Plaintiff urges this Court to find that the reasoning level 2 associated with the jobs of electronics worker, small parts assembler, and inspector/hand packager exceeds Plaintiff's RFC for simple and repetitive work; however, the United States Court of Appeals for the Third Circuit has held that a job with a reasoning level 2 does not "contradict the mandate that [the claimant's] work be simple, routine and repetitive." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004); *see also Jones v. Astrue*, 570 F. Supp. 2d 708, 716 (E.D. Pa. 2007) (finding no conflict between simple and routine tasks and the definition of reasoning level 2), *aff'd*, 275 F. App'x 166, 168 (3d Cir. 2008)). The Third Circuit has also held that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618. In addition, the three jobs identified by the vocational expert in this case are all classified as SVP 2 or "unskilled," "which suggests that the jobs require minimal reasoning ability[.]" *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 1:16-CV-05691, 2017 WL 4316880, at *7 (D.N.J. Sept. 28, 2017); *see also* 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). As previously noted, Plaintiff's counsel did not object to the vocational expert's testimony nor did she otherwise identify a conflict between such testimony and the DOT at the administrative hearing. *See generally* R. 2293–94. Under these circumstances, to remand this action on this basis would require that the Court disregard the evidence in this case and–contrary to Third Circuit authority–establish a bright-line rule in this area. *See Zirnsak*, 777 F.3d at 618. The Court declines to do so. Based on the record presently before this Court and the applicable law, the

Court concludes that the ALJ in this case was entitled to rely on the vocational expert's testimony at step five. *See id.*; *cf. Money*, 91 F. App'x at 215; *Dance v. Comm'r of Soc. Sec.*, No. 1:20-CV-03141-NLH, 2021 WL 3144696, at *9 (D.N.J. July 26, 2021) (stating that "[t]his Court has also addressed - and rejected - " the claimant's argument that "the ALJ erred by finding Plaintiff to be capable of performing two of the jobs . . . because the DOT lists these jobs as having a reasoning level of 2, which is a higher level than the RFC's requirement that Plaintiff be limited to jobs with only simple instructions and tasks") (citations omitted); *Soto v. Comm'r of Soc. Sec.*, No. CV 18-14165, 2020 WL 7022652, at *8 (D.N.J. Nov. 30, 2020) ("Where, as here, plaintiffs were limited to simple, repetitive tasks, courts have repeated[ly] found that the plaintiffs are at least suited for jobs that require Reasoning Level 2.") (citations omitted); *Rafine v. Comm'r of Soc. Sec.*, No. 1:19-CV-14215, 2020 WL 3073829, at *8 (D.N.J. June 10, 2020) ("Short of the ALJ repeating the exact phrase used by the DOT in its definition of GED level 2, something which the ALJ is not required to do, Plaintiff offers no other way the ALJ could have articulated the 'simple, routine tasks' limitation differently so that the limitation would align with a GED level 2 job."); *Molina Virola v. Comm'r of Soc. Sec.*, No. 18-CV-4778, 2020 WL 362747, at *4 (E.D. Pa. Jan. 22, 2020) ("The reasoning level determined by the ALJ was not limited to the ability to follow simple one or two-step instructions, which might trigger concern about her ability to perform jobs that require reasoning level 2. . . . Instead, the ALJ determined that [the claimant] can perform routine tasks and make simple work-related decisions. Such a limitation does not disqualify the plaintiff from work that requires reasoning level 2[.]") (citations omitted); *Montgomery v. Berryhill*, No. CV 17-0770, 2018 WL 1317856, at *5 (D.N.J. Mar. 14, 2018) (finding that "the ALJ's reliance on vocational expert testimony was 'inherently reasonable' even though the claimant argued that "the ALJ needed an explanation from the [vocational

39

expert] as to how the identified jobs—all with a DOT reasoning level of two, and thus allegedly beyond Plaintiff's mental abilities—comported with Plaintiff's deficiencies" because "Third Circuit precedent has established that level two jobs do not outright conflict with a requirement for simple, routine, and repetitive work") (citations omitted).[7] Accordingly, Plaintiff has not persuaded this Court that remand is required on this basis.

## VI.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  June 5, 2023                         *s/Norah McCann King*
                                         NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE

---

[7] It is true that this and other district courts in this circuit have remanded actions because of an inconsistency between the identified jobs and the DOT's reasoning levels, but those cases are distinguishable. *See, e.g., Susan A. v. Comm'r of Soc. Sec.*, No. CV 21-07949, 2022 WL 2304666, at *8–10 (D.N.J. June 27, 2022) (remanding where the vocational expert testified that a limitation to simple instructions would preclude the ability to carry out detailed written and oral instructions and the vocational expert identified jobs with a reasoning level 2); *Thomas v. Kijakazi*, No. CV 21-5153, 2022 WL 1747024, at *2 (E.D. Pa. May 31, 2022) (remanding where the vocational expert testified that the claimant, "who was limited to simple, routine tasks, would not be able to carry out detailed written and oral instructions" and the jobs identified by the vocational expert and adopted by the ALJ "all carry reasoning levels of at least two"); *Vickers v. Comm'r of Soc. Sec.*, No. CV 21-1093, 2022 WL 1620076, at *2 (W.D. Pa. May 23, 2022) (reflecting a RFC that limited the claimant to "unskilled work at the SVP 1 or 2 levels" and "to one or two step instructions" and remanding where jobs identified by the ALJ have a GED reasoning level 2" and "at the very least, [] the record presents a potential conflict that must be resolved").